Benjamin F. Edwards *v.* Q. D. Gibbs et al., Admrs. of James R. West, dec'd.

---

BENJAMIN F. EDWARDS *v.* Q. D. GIBBS et al., Administrators of JAMES R. WEST, deceased.

1. STATUTE OF LIMITATIONS : EFFECT OF CONCEALED FRAUD.—If the fraud by which the plaintiff is prevented from asserting his rights during the time prescribed by the Statute of Limitations be so concealed by the posi- tive act of the defendant that plaintiff could not have discovered it by reasonable diligence, the Statute of Limitations will not commence run- ning until the discovery of the fraud.

2. SAME : SAME : CASE IN JUDGMENT.—The bill charged that W., at the time of his application and at the date of his discharge as a bankrupt, had an estate in remainder, to vest after the death of his mother, in a large amount of property. This estate was secured to him by the will of his stepfather, which was probated in 1835. W., being then largely indebted, fraudulently withheld it from record after it had been probated, and kept it concealed until 1856, when he supposed all his debts were barred, and then placed it on record. W., being well apprised of his interest in the property, fraud- ulently omitted it from his bankrupt schedule, and thereby concealed it from his creditors. The complainant recovered a judgment against W. in 1839, but had no notice of these frauds nor means of knowing them, nor was there any thing to put him on inquiry as to the interest of W. in the property until the year 1856, when the will was recorded. The bill was filed in March, 1857. *Held*, on demurrer to the bill, that it was not barred by the Statute of Limitations. See *Buckner & Stanton* v. *Calcote*, 28 Miss. R. 431.

3. BANKRUPTCY : RIGHT TO BANKRUPT'S PROPERTY OMITTED FROM SCHE- DULE : JURISDICTION OF EQUITY TO ANNUL DISCHARGE, &c.—Whether property fraudulently omitted from his schedule belongs to his assignee for distribution among his creditors, or whether it would be appropriated by a court of equity in satisfaction of the debt of a creditor at whose instance the court should set aside the bankrupt's discharge for fraud—*Quære ?* But if it did belong to the assignee, the court would nevertheless entertain

Benjamin F. Edwards *v.* Q. D. Gibbs et al., Admrs. of James R. West, dec'd.

a bill to annul the bankrupt's discharge for fraud, and to render a decree against him for the complainant's debt.

4. WILL: LIMITATION OF ESTATES: VESTED REMAINDER: CASE IN JUDGMENT.—A devise by a testator "of all his property, both real and personal, to his wife S., to use and dispose of in any way she may think proper during her natural life, and at her death to his stepson W., to him and his legal heirs forever," gives to W. a vested estate in remainder. See *Rail* v. *Dotson*, 14 S. & M. 176 ; *Andrews* v. *Brumfield*, 32 Miss. R. 107.

5. BANKRUPTCY: VESTED REMAINDER MUST BE RETURNED IN SCHEDULE.— The wilful omission, from his schedule, by a bankrupt, of his interest in a vested estate in remainder to take. effect in possession after the termination ;of a precedent life-estate, is such a fraud as will vitiate his discharge.

APPEAL from the Chancery Court of Yazoo county. Hon. E. G. Henry, chancellor.

*H. S. Allen*, for appellant,

Cited and relied on *Buckner & Stanton* v. *Calcote*, 28 Miss. R. 432 ; *Young* v. *Clark*, 30 Miss. R. 331 ; Angell on Limitations, 2d ed. p. 28, 188, 193, 194 ; *Cook* v. *Lindsey*, 34 Miss. R. 456 ; Story's Eq. sec. 187, 192, 195, 204, 207, 640 ; to show that the Statute of Limitations was no bar ; and on Williams on Personal Property, 2d Am. ed. p. 202, 205, to show that West had a vested interest in the property.

*Gibbs* and *Wilkinson*, for appellees.

1. Appellant has no valid, subsisting claim which can be enforced against the estate of West, if the discharge in bankruptcy is declared void. *Mandeville et al.* v. *Lane et al.* 28 Miss. R. 312.

2. No actual fraud is shown by which complainant was prevented from keeping his judgment alive.

3. There was no such fiduciary relation between the judgment debtor, West, and complainant, as to take this case out of the Statute of Limitations. *Buckner & Stanton* v. *Calcote*, 28 Miss. R. 432.

*Yerger* and *Rucks*, on same side.

1. The judgment is certainly barred by the Statute of Limitations. To avoid the effect of the statute the complainant avers ֿ That West, when discharged in bankruptcy, was entitled in

remainder on the decease of his mother to certain real and personal estate, and into which he has come into possession since her decease in 1854; that he did not surrender this interest in his schedule in the bankruptcy, but fraudulently concealed his right under the will; that the will was proven in 1835, but was not recorded until 1855; that soon after its probate and before it was recorded, West got possession of it, kept it concealed, and never divulged its contents until 1855, and that this was done to defraud his creditors. The bill avers that West concealed all knowledge of the contents of the will till 1856, and that complainant had no means of knowing, nor was there any thing calculated to put him upon inquiry, as to the contents of the will, till 1856. These allegations are not sufficient. In order to avoid the effect of the Statute of Limitations it is necessary to show, not only ignorance of the fraud, but that with due diligence it might not have been discovered.

2. But this bill cannot be maintained for another reason. If it be true that the property sought to be reached in this case belonged to West at the time of his discharge in bankruptcy, it passed by the decree of bankruptcy to the assignee, and became and is now his property, subject to recovery by him, and is not the property of Parker, or liable to be recovered of him by any other party than the assignee. All property belonging to the bankrupt passed by operation of law to the assignee immediately on the declaration of bankruptcy, whether included in the schedule or not; and no creditor has a right to file a bill to subject it to his individual claim. The right is in the assignee for *all* creditors. The fact that there was a fraudulent concealment of effects will not change this principle. A debtor who made a *fraudulent* concealment might, on that fact appearing, have been denied his certificate; or if he had obtained it, upon a proper showing before a proper tribunal that certificate might have been set aside. Or if the discharge in bankruptcy was pleaded to a suit on any claim existing at the date of his bankruptcy, a replication that it was obtained by fraud might be interposed. The effect of this replication, if sustained, would have enabled the creditor to maintain his suit, and by execution to reach *all after-acquired* assets or property of the bankrupt

Benjamin F. Edwards *v.* Q. D. Gibbs et al., Admrs. of James R. West, dec'd.

subsequent to his discharge, but not to reach his effects at the date of the bankruptcy, because those, by virtue of the declaration of bankruptcy, had already passed to the assignee. This distinction between the right to subject after-acquired property and that in possession at the date of the bankruptcy frees from all difficulty the construction of the bankrupt law.

This court has decided, in the case of *Buckner & Stanton* v. *Calcote*, 28 Miss. R. 432, and the Supreme Court of the United States, in the case of the *Commercial Bank of Manchester* v. *Buckner*, 20 How. 113, has also held, that where parties have proved their debts and taken a dividend from his effects, the District Court, and no other court, can annul the decree of the bankrupt's discharge, either partially, for the benefit of a particular creditor, or wholly, to deprive the bankrupt of its operation. But the case of creditors who have not come in and proved their debts, and are not parties to the decree in bankruptcy, and the forum in which they may bring suits to impeach the discharge, is left an open question. My own opinion is, that such a creditor may file a bill or bring a suit against a bankrupt, in any court which would have had jurisdiction of the case originally, to recover on his demand, treating the bankruptcy as a nullity if obtained by fraud; but that the effect of such suit would only be to reach the property of the bankruptcy acquired after he was declared a bankrupt, and not to reach that property belonging to him when so declared, because, by operation of law, on such declaration being made, it at once passed to the assignee. If this be the correct view of the law, this bill cannot be maintained, because it is not to reach after-acquired property, but to recover what it is alleged the bankrupt owned but concealed when he made his inventory.

But, 3. The claim or interest in the will of Parker was not such a claim or interest as he was compelled to surrender in bankruptcy. It was no vested estate, but was a mere contingency. The whole estate was given to Mrs. Parker, "to use and dispose of in any way she may think proper during her natural life." This gave to her the absolute right of disposition during her lifetime, and only left a contingent remainder to her son—a

remainder contingent upon the fact that she died without making any disposition of it.

HANDY, J., delivered the opinion of the court:

This bill was filed by the plaintiff in error, a judgment-creditor of James R. West, seeking to set aside the certificate of discharge in bankruptcy granted in the year 1842 to said West, by the District Court of the United States sitting in this State, on the ground of fraud in obtaining the certificate, and praying for a decree against his administrators (he being dead) for the amount of the judgment.

The bill states the rendition of the judgment in April, 1839, and that executions were issued thereon in 1839 and 1840, which were returned "nulla bona;" that in 1842 West filed his petition in bankruptcy, and was thereupon decreed to be discharged from his debts, which is alleged to have been obtained by fraud in the following manner: that in the year 1835 one Parker, the stepfather of West, died in Holmes county, leaving a will, which was admitted to probate in that county in that year, by which he became entitled to a large amount of property on the death of his mother, the widow of the testator; that his mother died in the year 1854, at which time West was entitled to take possession of the property under the will, and that he then or soon after took possession of it.

The bill charges that West was aware of the provisions of the will, and was present and knew of its probate in 1835; that he obtained possession of it before it was recorded, and took it from the office and fraudulently prevented it from being recorded, to the end that his creditors might not know of its contents, (he being then insolvent, with judgments to a large amount against him,) and suppressed the will until the year 1855, when he produced it in the Court of Probates of Holmes county, and petitioned to have it admitted to record, he then believing all his debts to be barred; that in the mean time, for the purpose of defrauding his creditors, and in violation of the Act of Congress, he omitted from his schedule in bankruptcy his rights of property under said will, and concealed from the complainant all knowledge of the contents of the will until the year 1856; that

Benjamin F. Edwards *v.* Q. D. Gibbs et al., Admrs. of James R. West, dec'd.

the complainant had no means of knowing, nor was there any thing calculated to put him on inquiry, as to the contents of it until the year 1856; that West applied to have the will admitted to record when he did, in order to establish his title to the property named in it, as he was in danger of losing a part of it; but that he obtained possession of the will long prior to his filing his petition in bankruptcy.

The bill states that the complainant had no notice of the frauds and concealments practised by West, as above stated, and insists that they render the certificate of discharge void as to his judgment. It was filed in November, 1856.

The defendants, administrators of West, demurred to the bill, on the ground that the judgment was barred by the Statute of Limitations; and the demurrer was sustained and the bill dismissed.

It is manifest, from the allegations of the bill, that its object is, first, to have the discharge in bankruptcy declared fraudulent and void as to the complainant's judgment; and, secondly, to obviate the objection of the Statute of Limitations to the judgment. The demurrer raises no question as to the sufficiency of the bill on the first point, but relies solely on the bar of the statute against the judgment. It, of course, admits all the facts stated in the bill as an excuse for the complainant's failure to enforce his judgment or to file his bill at an earlier period; and the question presented is, whether the facts stated are sufficient to entitle the complainant to relief in equity against the bar of the statute.

These facts are, in substance, that West, at the time of his application for the benefit of the bankrupt law and at the date of his discharge, had an estate in remainder in a large amount of property under the will of his stepfather, of which he was then apprized; that when the will was admitted to probate in 1835, he fraudulently withheld it from record, for the purpose of concealing his interest in the property from his creditors—he being then largely in debt—and kept it concealed until the year 1856, when, supposing that all his debts were barred, he had it placed on record; that he fraudulently omitted from his bankrupt schedule his interest in this property, and thereby concealed

it from his creditors; and that the complainant had no notice of these frauds nor means of knowing them, nor any thing calculated to put him on inquiry as to the interest of West in the property, until the year 1856, when the will was recorded by him.

If these statements be true, they are clearly sufficient to prevent the bar of the statute. They show, first, that the defendant's intestate was, by force of the certificate of bankruptcy, discharged from the complainant's judgment; and, there being nothing to give notice that the certificate was obtained in fraud of law, the complainant was well justified in not having executions issued to keep the judgment alive after the date of the discharge, for such executions would have been irregular, being upon a judgment which was annulled by the discharge, if it was properly obtained. But it is alleged to have been obtained by the fraudulent omission of the bankrupt of a large amount of property, or his interest in it, which should have been surrendered in his schedule; and, hence, that the discharge is in violation of the Act of Congress and inoperative as to the complainant's judgment. If this be conceded, it certainly invalidates the discharge.

Having thus stated the reason why legal steps were not taken in due time to enforce the judgment by execution, the bill then shows that the bankrupt, with the fraudulent intent of concealing his interest in the property bequeathed to him in the will, withheld the will from record, suppressed his interest in the property in his bankrupt schedule, and concealed the contents of the will from the complainant until the year 1856, there being in the mean time nothing to give notice or to excite inquiry as to the contents of the will and his interest in the property thereby bequeathed to him; in consequence of which, the complainant had no notice of these frauds until the will was filed for record in 1856.

Thus, the fraud and concealment charged were by the positive acts of the bankrupt, which, for aught that appears, no reasonable diligence of the complainant could have brought to his knowledge. The will which conferred the interest had been secreted and kept in the possession of the bankrupt, without

being placed on record, and the property was not in his possession until the year 1854. If that mere possession, in the absence of all knowledge, either actual or constructive, of the will which gave him the property, could be considered sufficient to charge the complainant with notice and to excite him to diligence, yet it appears that this bill was filed in due season after that time. But the creditor had no notice whatever of the interest in the property before that time, because the instrument which could give him the notice was fraudulently withheld from record, and in the secret keeping of the party claiming under it, so that there was no trace of his title, and nothing that the greatest diligence could take hold of to lead to a knowledge of his interest in the property. The case appears to come fully within the rule recognized in *Buckner & Stanton* v. *Calcote*, 28 Miss. R. 432–596, and in *Matthews* v. *Sontheimer*, at this term.

Secondly. It is insisted in support of the demurrer, that, conceding that the property bequeathed to West was fraudulently withheld from his schedule in bankruptcy, yet that the right and title to it, nevertheless, passed to the assignee in bankruptcy, and that it is not liable to be subjected to the complainant's claim in this case. If this position be admitted to be correct— and we do not express any opinion upon it, as it is not presented by the demurrer—it is a sufficient answer to it, that the bill does not seek that the property in question be specifically held liable to the complainant's claim; but that the decree in bankruptcy be declared void as to the judgment, and that a decree be rendered for the amount of the judgment, which, of course, will be levied of any property of the intestate which may, in law, be subject to execution as his property.

Thirdly. It is objected, that West had no such estate in the property bequeathed in the will for his benefit as he could have surrendered in his schedule in bankruptcy.

By the second item, the testator bequeaths all his property, both real and personal, to his "wife Sarah, to use and dispose of in any way she may think proper during her natural life; and at her death to his stepson James R. West, to him and his legal heirs or assigns forever."

It is contended that this clause of the will gave merely a

contingent interest to West, to become vested on the widow dying without having disposed of the estate in her lifetime. But we do not agree with this view.

Whilst it is true that the bequest to the widow of the property, "to use and dispose of it in any way she might think proper, during her life," would, if it had been alone, have passed an absolute estate to-the widow; yet this must be construed with reference to the limitation which immediately succeeds it, to James R. West. And the effect of these words of limitation is to qualify the estate given by the previous words to the widow, and to give her the *usufruct* of the property during her life, with remainder to West at her death. And the legal effect of the clause is, to give him a vested estate in remainder. *Rail et al.* v. *Dotson et al.* 14 S. & M. 176; *Andrews* v. *Brumfield,* 32 Miss. R. 107.

