SMITH *et al. v.* STRICKLAND *et al.**

(Division A. April 13, 1925.)

[103 So. 782. No. 24817.]

1. WILLS. *Power to mortgage or alienate fee devised to children held not conferred on mother by terms of will.*

   Will giving land to children and their mother, share and share alike, with expression of desire that she shall manage and control it without restraint on account of their minority, and have full and unrestrained use of it in the responsibility left her of raising the children, "realizing that she must have all of the income from such property to meet such demands," *held* not to empower her to mortgage or otherwise alienate the fee devised to the children.

2. PARTITION. *Decree confirming sale voidable by infant for want of good faith of next friend in purchasing.*

   Where one who as next friend for an infant petitioned for sale for partition purchases at the sale, good faith is lacking, making decree confirming the sale voidable by the infant.

3. PARTITION. *Purchasers from one who had bought at sale petitioned for by her as next friend of infants charged with notice of defect.*

   Purchasers from one who purchased at sale for partition, though she as next friend for infant owners had petitioned for such sale, are chargeable with notice of such defect in her title.

(1)

4. PARTITION. *Infant may during minority, by setting up bad faith of next friend in partition, defend against title under partition sale asserted against them by suit.*

Where decree in confirming sale in partition proceeding was voidable by a minor, because of want of good faith of his next friend, who purchased at the sale, and title under such sale was by suit asserted against the minor, he can during his disability assert and defend his title in such suit by setting up such want of good faith.

5. APPEAL AND ERROR. *In view of replication to answer, case treated on appeal as though proper cross-bill had been filed below.*

Though defendants failed to file a cross-bill, as they should, yet complainants having filed what is termed a replication to answer setting up defendants' rights, the appellate court will treat the case as though the proper pleading had been had in the court below.

6. PARTITION. *Statute limiting time for recovery of land sold under chancery order inapplicable to attack by infants, because of bad faith of next friend, of sale for partition.*

Time of minors for attacking sale for partition of their land because of the bad faith and legal fraud of their next friend in the proceeding by being the purchaser is unaffected by Code 1906, section 3122 (Hemingway's Code, Section 2486), limiting time for action to recover property sold by order of chancery court, where the sale is "in good faith."

7. PARTITION. *Statute giving infants a year after attaining majority for showing why decree for sale of their land should not be binding held not to limit time for attacking partition sale for bad faith of their next friend.*

Code 1906, section 646 (Hemingway's Code, section 408), providing that decree for sale or conveyance of land of an infant shall be binding on him unless he shall, within a year after attaining age of twenty-one years, show to the court good cause to the contrary, etc., *held* intended merely as a saving to a minor of right to have any decree against him subject to review within such time, and not to limit time in which minors can attack sale for partition of their land, and decree confirming it, because of the fraud of their next friend, representing them in the proceeding by being the purchaser.

*Headnotes 1. Wills, 40 Cyc., p. 1821; 2. Partition, 30 Cyc., pp. 275, 284 (1926 Anno); 3. Partition, 30 Cyc., p. 289 (1926 Anno); 4. Partition, 30 Cyc., p. 284 (1926 Anno); 5. Appeal and Error, 3 C. J., section 622; 6. Partition, 30 Cyc., p. 284 (1926 Anno); 7. Partition, 30 Cyc., p. 284 (1926 Anno).

APPEAL from chancery court of Lauderdale county.

HON. G. C. TANN, chancellor.

Suit by J. R. Buchanan and another against Stephen G. Smith and others. From an adverse decree, certain defendants appeal. Reversed and remanded.

*J. E. Parker* and *E. L. Snow,* for appellants.

It is the contention of the appellants that the authority given the widow under the will involved in this case, does not grant or convey any right or power in such widow to mortgage the property involved in this suit. The controlling rule of will construction is the intention of the testator.

It must be manifest that the older children had already received the benefits of support and sustenance through their infancy or the period of their childhood, and if their father is to be understood as intending an equality of distribution among his children such equality must relate to the quantity of such estate to be received by each of his children when they reach maturity, and if this was the intention of the testator the *corpus* of the estate left to these three infants was not intended to be consumed prior to their reaching maturity, and further, it is the contention of appellants that the language used in this will is plain and unambiguous in fixing in the widow a one-fourth interest in this property and in addition thereto, a power over the other three interests therein, which power did not include the authority to mortgage the said property but was limited to the authority of managing and controlling the said property and having the use thereof to the extent of receiving the income from such property.

In applying the rules accepted in the construction of wills, see *Goudie* v. *Johnson,* 10 N. E. 296. If we are to take the language used which is relied upon by the appellees herein, it will not appear that such language has the force contended for by the appellees. *Blanton* v.

*Mays,* 58 Texas 422; *Lester* v. *Kirkley,* 104 S. W. 213; *Voorman* v. *Vergil,* 88 Atl. 372; *Brunson* v. *Martin,* 52 N. E. 599.

This is not a case where a father was undertaking to leave the welfare of his children in the hands of their mother, but this will was intended to fix an ownership of property in such children and give a power of management over said property to their mother. The exercise of management ceases with a destruction of property and it is only by a continuation of the ownership of such property by the children that an opportunity of management may be had. The power of management and control and use are incidents themselves of title in the children and necessarily suppose a continuation of such title in order that such management, control and use may also continue.

The court below held that the sale in the partition suit was voidable inasmuch as the purchaser at this sale was the next friend of the minors in the petition for such sale and we think that the law is announced in the Mississippi case of *Memphis Stone & Gravel Co.* v. *Archer,* 82 So. 315; *Belt* v. *Adams,* 87 So. 667; *Ponder* v. *Martin,* 80 So. 388. This case is a striking example of the wisdom and justification of the law as announced in the above cases.

We are of the opinion that the words, "manage," "control" and "use," have a definite and fixed meaning and when used in connection with the income from this property as was done in this will, we can see no reason why those words could be made to include the power to mortgage, and we believe that the handling of this property has done such violence to the terms of the will of the deceased, that the courts will not lend approval thereto, but will reverse this case in recognition of the right and title now held by the appellants herein.

*Bozeman & Cameron,* for appellees.

We submit that in the light of the circumstances the intent of the testator, manifest from the will, was that

the wife should have full and unrestrained power in her discretion to obtain from this property, by mortgage or deed of trust on it, if the net income were insufficient, the money necessary to "raise and properly equip her three children for the responsibilities of life." As expressed in the will, the testator recognized that the raising and equipping of these little children for life was a "great responsible duty" left to the wife and that she must have all the income from such property to meet such demands.

The testator directed, therefore, that his wife should "manage and control said property without restraint on account of the minority of said children, and without appointment of a guardian." He further expressed his "full confidence in her sound judgment" and her "affection for the children," and that she would at all times, "look to the best interest of her children." And having such confidence in her the testator directed that she should have the full and unrestrained use of said property in the great responsible duty left to her.

The will did not give her the right to manage and control and use the property for her life, with remainder to her children; nor did it anywhere direct that the property should be retained or preserved for the children, as the case in *Blanton* v. *Mays.*

We submit to the court that under the circumstances existing at the time of the partition proceeding and of the execution of the deed of trust—the poverty of Mrs. Chapman and of her three children—their being without adequate money to support or educate the children—that the borrowing of this money for the support of the family, including these three children, and the execution of the deed of trust, was fully authorized by the will, and was well within the power and discretion given thereby to the wife—the mother of the appellants.

Our contention is supported, we submit, by a number of well-considered cases, some of which we call to the attention of the court. *Andrews* v. *Brumfield,* 32 Miss. 107 (114); *Warren* v. *Ingram,* 96 Miss. 438, 51 So. 888; *Col-*

*burn* v. *Burlingame,* 27 A. L. R. 1374, (Cal.) 214 Pac. ——;
*Allen* v. *Hirlinger,* 219 Pa. 56; *Welsh* v. *Gist, et al.*
(1905), 101 Md. 606, 61 Atl. 665; *Kennedy* v. *Pittsburg,*
*etc. R. R. Co.* (1907), 216 Pa. 575, 165 Atl. 1102; *McGuire*
v. *Gallagher* (1904), 99 Me. 334, 59 Atl. 445.

A power of sale is often implied, though not given in
express terms: for instance, by a disposition of what-
ever may remain, etc." *Lakey* v. *McMurrain* (1922), 154
Ga. 705, 115 S. E. 76. See also *Carleton* v. *Goebler,* 94
Tex. 93, 58 S. W. 829; *In re Jenks, et al.,* 21 R. I. 390,
43 Atl. 871; *Swarthout* v. *Rainer,* 143 N. Y. 499, 38 N. E.
726.

## II.

PARTITION PROCEEDINGS. In so far as this suit, at least,
is concerned the sale to Mrs. Chapman, the next friend,
was sufficient to convey her a good title as against the
appellants. The only objection interposed to the validity
of the partition sale is the fact that Mrs. Chapman, the
next friend of the minors, became the purchaser.

It is manifest from the record in this case that Mrs.
Chapman's purchase of the property was not hostile to
her three minor children, nor intended to injure or de-
fraud them; but was for the purpose of enabling her to
execute a deed of trust satisfactory to the person from
whom she was borrowing money for the support of the
minor devisees, complainants in that proceeding.

No appeal has ever been taken from said final decrees
in partition and no bill of review has ever been filed by
either of said minors. It is evident that both Stephen
and Earl are now precluded from questioning the va-
lidity of the partition proceeding by reason of the lapse
of time within which they could file a bill of review; and
that the only interest now subject to bill of review is the
one-fourth undivided interest of Thomas Givens Smith,
who is still a minor, of the age of twenty years.

The appellants and each of them are estopped to now
question the validity of the partition proceedings by

section 2083, Code 1906, section 1750, Hemingway's Code. We submit further that under section 2848 (3536) and 2475 (3111), Hemingway's Code, which are the same as the corresponding sections in Code of 1906, the partition proceedings are binding upon each of the appellants until and unless a bill of review has been filed as provided in section 2848; and further that since more than two years have now elapsed since the two older appellants, Stephen and Earl, became of the age of twenty-one years, they are now precluded from filing a bill of review and are finally bound by the partition proceedings.

Under these sections we submit that the partition decrees, the final decree and the decree confirming the sale, for the purposes of this suit, are evidence of the title of Mrs. Mary Chapman, purchaser, and are conclusive of the rights of appellants since no appeal, or bill of review, has yet been filed. *Martin* v. *Gilleylen,* 70 Miss. 324. See, also, *Gilleylen* v. *Martin,* 73 Miss. 695; *Jordan* v. *Bobbitt,* 91 Miss. 1; *Brooks* v. *Spann,* 63 Miss. 198; *A. D. Brown* v. *Long Bell Co.,* 103 So. 353.

An affirmance will be in accord with right and justice, since the appellants have already enjoyed the full benefit of the full value of the property in question, in accord with the intent of the testator, their father.

Argued orally by *E. L. Snow,* for appellants, and *A. S. Bozeman,* for appellees.

McGOWEN, J., delivered the opinion of the court.

J. R. Buchanan and his wife filed their bill in the chancery court of Lauderdale county, Miss., against Mrs. Mary G. Chapman and her children, Stephen C. Smith, Edward Earl Smith, and Thomas Givens Smith, who were nonresidents of the state. The purpose of the bill was to confirm the title of the complainants to the land described as lot 12 of block 35, of Dillehay & Weatherbee's subdivision of Dearman's survey of the city of

Meridian, Miss., and to cancel and remove as a cloud up-
on said title any and all claims, rights, or title thereto,
which may be claimed or asserted by the defendants or
either of them.  Complainants alleged that they were in
possession of the land, and that they and the defend-
ants claimed title under a common source, to-wit, from
Stephen P. Smith, the former husband of Mrs. Chapman
and the father of the three last-named defendants.  That
Stephen Smith died in the year of 1905, testate.  That by
the terms of the will the land in controversy was devised
to Mary G. Smith, nee Chapman, and his three children,
Stephen G. Smith, Edward Earl Smith, and their then
unnamed baby boy, but in this record known as Thomas
Givens Smith.  The devise, quoting from the will, is
as follows:

"I give and bequeath unto my beloved wife, Mary G.
Smith, and our three children, Stephen G. Smith and
Edward Earl Smith, and our baby boy, who was born
on August 5, 1904, and is yet unnamed, share and share
alike, the following real estate situated in the city of
Meridian, county of Lauderdale, and state of Missis-
sippi, to-wit, lots 11, 12 and 14 of block 35 of Dillehay's
and Weatherbee's subdivision of Dearman's survey of
the said city of Meridian, in the said county and state.

"It is my desire that my beloved wife, Mary G. Smith,
shall manage and control said property without restraint
on account of the minority of said children and without
the legal appointment of a guardian, having full con-
fidence in her sound judgment, her affection for the chil-
dren; well knowing that she will at all times look to the
best interest of her children, and desiring that she have
the full and unrestrained use of said property in the
great responsibility and duty left her, of raising and
properly equipping our little children for the responsi-
bilities of life, realizing that she must have all of the
income from such property to meet such demands.

"The said lots so bequeathed to my wife, and her
three children being now incumbered by deed of trust

to J. H. Campbell, for the sum of seven hundred and fifty dollars, I desire and direct that the said debt be paid off and discharged out of moneys now due me from S. J. Phillips, leaving said property, or lot 14 of block 35, which is so incumbered, free from all incumbrances. The balance of the money due by the said S. J. Phillips, I desire and direct shall be paid to Alfred H. Smith, to pay off and satisfy a deed of trust for five hundred and fifty dollars due said Alfred H. Smith, said deed of trust embracing lot 4 of block 27, of Dearman's survey of the city of Meridian, known as the Finch Place."

In February, 1910, Mrs. Smith having married and become Mrs. Mary G. Chapman, filed a petition in the chancery court for herself individually and on behalf of her said three children above named, appearing in said petition as their mother and next friend, praying for a sale for partition and for distribution of the proceeds. An interlocutory decree of sale was entered by the court on May 9, 1910, ordering the land sold, and appointing W. R. Pistole special commissioner to make said sale. In pursuance of the interlocutory decree, the commissioner advertised and sold the land. At the sale Mrs. Mary G. Chapman, the next friend of her minor children, became the purchaser for one thousand five hundred dollars which sale was duly reported on June 7, 1910, and on motion of the mother and next friend together with the children on June 7, 1910, the court confirmed said sale, and directed the commissioner to convey the said lands to Mrs. Mary G. Chapman, and decreed the distribution of the proceeds one-fourth each to Mrs. Chapman and her minor children, after payment of the incumbrances thereon held by J. T. Mosley, and the costs of the proceedings. Pursuant to said decree Pistole, the commissioner, conveyed the lands in controversy to Mrs. Mary G. Chapman. Subsequent to the decree of confirmation, on October 11, 1910, Mrs. Chapman filed a petition, praying that the proceeds of said sale be paid to her on behalf of her three minor children pursuant to

the provisions of the will. Citation was served on the minors, and on October 17, 1910, the court entered an order, directing that the proceeds be paid to the mother for them.

On June 10, 1910, Mrs. Mary G. Chapman borrowed from the trustees of the rector's endowment fund of St. John's Church of Versailles, Ky., the sum of two thousand five hundred dollars and executed a trust deed upon the lands bought at the sale as above to secure the payment of said sum. She failed to pay the notes, and the trust deed was foreclosed; A. C. Hunter becoming the purchaser of the lots for the sum of two thousand eight hundred ninety-four dollars on October 15, 1912. Thereafter the land was conveyed to Slayton, and by Slayton to Harbour, and by Harbour to the complainants, J. R. Buchanan and wife.

The bill further alleges that Buchanan and wife had been in the actual, adverse, uninterrupted possession of lot 12 for more than ten years past; alleged improvements made upon the land and the payment of taxes; alleged that complainants had a perfect title to the land and that neither of the defendants had any right or title thereto.

The bill prayed for process, that the title be quieted and confirmed, that the pretended claim of the defendants and each of them in said land be canceled and removed as a doubt and suspicion, and prayed, in the alternative, that, if it should be decreed that any of the defendants had any right or title to the land, an accounting be had of rents, profits, and improvements, "and that the court may thereupon decree a sale of said lot and of the improvements thereon, and may decree that out of the proceeds of said sale the complainants may be first reimbursed the amount so charged against said lot, and that any balance remaining may be distributed according to the interest of the various parties," and a prayer for general relief.

The original bill was filed August 7, 1923, which was amended by interlineations on November 14, 1923. On November 2, 1923, the defendants, Mrs. Chapman and her three children, filed their answer, denying that complainants were the owners of the lands; admitting that they claimed through a common source of title; admitting the death of their husband and father testate in the year 1905; admitting the will; admitting the chancery court proceedings for the sale of the property for division of proceeds; but asserting that the three children were minors and that the said trustee's deed and said sale and proceedings did not convey said minors' interest in the land; denied that the sum of one thousand five hundred dollars named as the purchase money was paid; denied that the mother, Mrs. Chapman, had any right to incumber their interest; admitted that they claimed to be the owners of three-fourths interest in and to the lands herein involved; admitted that the land should be sold for division; that an accounting should be had for rents, taxes, and improvements, etc.; and joined in the prayer for an accounting, for a sale, and for a division of proceeds.

Thereupon, on May 23, 1924, the complainants filed what is denominated as a replication to the answer of the defendants, setting up that section 2848, Hemingway's Code, provided that the final decree of the chancery court in partition proceedings was conclusive as to the rights of all parties, subject to appeals and bills of review. They next set up in their replication, so-called, that by section 2475, Hemingway's Code, bills of review should be filed within two years next after the date of the final decree in partition of a chancery sale, and not after, saving to persons under disability of minority or of unsound mind, and to such a like period of two years after the removal of disabilities. They then set up that more than two years had intervened as to the defendants, except Thomas Givens Smith. This replication further set up that section 2486, Hemingway's Code, prohibited the

bringing of an action where the purchase money was paid and sale made in good faith, unless brought within two years after possession was taken by the purchaser, and set up that the proceedings of 1910 was a chancery court sale, in good faith, that the purchase money was paid, possession was taken, and as to all save Thomas Givens Smith that more than two years had elapsed after possession taken before the bill was filed and the answer in this case. It was further set up in the so-called replication that by section 408, Hemingway's Code, where a decree shall be made for the sale or conveyance of the real estate of an infant, such decree shall be binding upon the infant, unless he shall within one year after attaining the age of twenty-one years show to the court good cause to the contrary.

The proceedings by O. B. Strickland and Clara Strickland, his wife, against Mary G. Chapman and her children are identical, and the cases were combined by the chancellor and tried as one case, and shall be hereafter so considered by us.

Mrs. Chapman testified that at the time of this sale she had remarried; that she appeared in person and bid in the land for one thousand five hundred dollars; that, although she executed her receipt to the clerk and commissioner for the interest of the children, she did not in fact receive anything from the clerk; that she never in fact paid the purchase price, but that she did pay the court costs and attorney's fees after she had secured the church trustees' loan amounting to two thousand, five hundred dollars; that she used the balance of the proceeds of the loan in the support of herself, her husband, these children, and another child by the second marriage.

The defendants, Mrs. Chapman and her children, assert on behalf of the children that at the time of the partition sale in 1910 these children were all minors, and that the sale of the land to Mrs. Mary G. Chapman, who had appeared in the petition for the sale as next friend of said minors, was voidable, and that subsequent con-

veyances did not affect their title, and that they now held the title to a three-fourth interest, one-fourth each, in the lots so sold in 1910.

The chancellor held that the sale of the land to the next friend was voidable except for the provisions of the will of Stephen Smith, the father of the minors, through whom they claim. The chancellor further held that the powers conferred upon Mary G. Chapman, the mother of said minors, by the will of Stephen Smith, authorized and empowered Mrs. Chapman to borrow money, and that she was empowered by said sale to execute the deed of trust, which she did execute to the rector's endowment fund of St. John's Church, and further ordered that complainants, J. R. Buchanan and wife, were the real owners in possession of the lands described, and were entitled to have their title quieted and confirmed, and by decree canceled all claim and removed all clouds upon the title of the complainants so far as the minor defendants were concerned.

Was the chancellor correct in holding that the provisions of the will conferred upon Mary G. Chapman the power to mortgage or otherwise alienate the lands of her minor children?

In his presentation of the case, counsel for appellees seems to have entirely lost sight of the concluding paragraph of section 4 of the will which is as follows: "Realizing that she must have all of the income from such property to meet such demands."

If by judicial construction it could be imagined that the words, "full and unrestrained use," were synonymous with "dispose of, use for her exclusive use and benefit," "to do with it at discretion," then these latter words of the will would with absolute certainty, explain away such a construction, and vest a fee-simple title in the mother here and her children of the same character, and with the power of management and guardianship as to said property without the handicap of court proceedings as the testator saw it.

The concluding words of the second clause of the will, above quoted, limit the wife and mother to the management, government, and expenditure of the income, and no case cited by counsel for appellee contains such words of limitation where similar words granting power of sale were reviewed and construed in the various adjudicated cases cited.

We think the construction here announced is not subject to debate, but we will examine some of the authorities cited by counsel to this case.

In *Andrews* v. *Brumfield,* 32 Miss. 107, the first and second clauses of the will there under discussion bequeathed the property to Mrs. Andrews, limiting to her expressly for the term of her natural life. The language was plain, and it would not have been questioned that a life estate only was devised there to her had it not been for the seventh clause of the will, in which the testator declares that the property passing under the first and second clauses "shall be delivered into her possession as soon after my death as possible, that she may have full control of the same, and be empowered to dispose of the same as she may think proper." We think that this language admits of but one construction. The word "dispose" used in the seventh clause of the Andrews will in connection with the property described in the first and second clauses, manifestly shows the testator's plain intention to grant the power of disposition, and she had the power to elect.

In *Warren* v. *Ingram,* 96 Miss. 438, 51 So. 888, Ann. Cas. 1912B, 422, the words there used in the will under consideration which came up for construction by this court were as follows: "To have and to hold during her life and to do with the same as in her judgment she may deem best." Without going into a review of this case we quote only these sentences from Judge SMITH's opinion in that case:

"This decision [referring to *Andrews* v. *Brumfield, supra*] is in accord with the weight of authority, and

seems to us conclusive of the case at bar. There can be no real difference between a power to dispose of property at discretion and a power to do with it at discretion. If there is any difference, the latter power is the broader one.''

It will be noted in both the above cases there was an effort to vest a life estate and additional powers conferred in subsequent clauses. While in the case at bar the language which vested the title in the mother clothed the children with the same title in the same property, with the power as the mother to manage and control and have the full and unrestricted use of said property, ''realizing that she must have all of the income from such property to meet such demands,'' clearly showing that the testator negatived the idea of any use of the *corpus* devised, but only the income.

We find all the cases cited by counsel for appellee different from the case at bar in this that the same estate was not attempted to be vested in the same clause, but usually a life estate with remainder over, and that no words of limitation clearly negative the idea that the fee was to be under the control of the devisee, but only the income from the fee. So we will not take up the cases cited by counsel from other jurisdictions.

In *Edwards* v. *Gibbs*, 39 Miss. 166, our court was called upon to construe the will of Parker, the essential part of the second item of which bequeathed ''all his property, both real and personal, to his 'wife Sarah, to use and dispose of in any way she may think proper during her natural life; and at her death to his stepson James R. West, to him and his legal heirs . . . forever.' '' In that case the court said:

''It is contended that this clause of the will gave merely a contingent interest to West, to become vested on the widow dying without having disposed of the estate in her lifetime. But we do not agree with this view.

''Whilst it is true that the bequest to the widow of the property, 'to use and dispose of it in any way she might

think proper, during her life,' would, if it had been alone, have passed an absolute estate to the widow, yet this must be construed with reference to the limitation which immediately succeeds it to James R. West. And the effect of these words of limitation is to qualify the estate given by the previous words to the widow, and to give her the usufruct of the property during her life, with remainder to West at her death. And the legal effect of the clause is to give him a vested estate in remainder. *Rail et al* v. *Dotson et al.,* 14 S. & M. 176; *Andrews* v. *Brumfield,* 32 Miss. R. 107.''

*Edwards* v. *Gibbs, supra,* is the strongest language in our decisions for appellees' contention, with the words of devise and power more nearly similar to the case at bar than any cited, and yet the court held that the words, ''to use and dispose of in any way she may think proper during her natural life,'' only permitted her to use the usufruct of the property, or income of the property, during her life, with remainder over to West, and, while more nearly like the case of the appellees, yet the conclusion reached by the court there that this power was limited in our judgment is absolutely conclusive as to our duty in the instant case. So that we think the chancellor was in error in the case at bar in holding that there was a power to mortgage or alienate the fee devised to these children vested in the mother. No such power vested in her by the terms of this will.

As to the decree confirming the sale in the partition proceedings in the year 1910, the facts in all essential details are well nigh identical with the facts set out in the case of *Stone & Gravel Co.* v. *Archer,* 120 Miss. 453, 82 So. 315, wherein Chief Justice SMITH held that:

A next friend could not ''procure an order for the sale of his ward's land . . . without the ward's understanding and appreciating, if in fact he was aware of, what was being done, would violate one of the most elementary principles of equity, viz., a fiduciary will not be permitted any inducement to neglect the interest of his

*cestui que trust,* unless the *cestui que trust* consents thereto, and this the appellee because of her minority could not have done,'' citing *Brandau* v. *Greer,* 95 Miss. 100, 48 So. 519, 21 Ann. Cas. 1118, and holding that, while a decree of partition on the petition of the minor by a next friend is presumably in the minor's interest and is binding upon the minor, ''provided the next friend acts in good faith. *John* v. *Harper,* 61 Miss. 142.''

Judge SMITH held in the *Archer case, supra,* that it was presumed, where the next friend purchased at the sale procured by said next friend of the minor, that good faith was lacking.

So that in this case Mrs. Smith *née* Chapman, as next friend, in law and equity, did not act in good faith when she purchased the land in controversy at the sale procured by her in the partition proceedings, and this, too, without considering the fact that the mortgage was immediately executed for a two thousand five hundred dollar loan, or one thousand dollars more than she had paid at the sale, and eliminates the further fact that no money was paid into court save the attorney's fee and the court costs, and the payment of her own individual note and trust deed on her share in the identical property; and the parties who are her successors in title knew these facts.

When the decree in the partition suit was avoidable by the minor and title was asserted against the minor in a court of law or equity, such peculiar and extreme circumstances arise as in our judgment warrant a minor during disability to appear in court and set up the invalidity of the outstanding title sought to be enforced against him; and the case at bar is clearly within the exception to the rule as stated in the case of *McLemore* v. *Chicago, etc., Railroad Co.,* 58 Miss. 514, and we hold that the minor has the right to assert title and defend the title by setting up the want of good faith on the part of his next friend in the original partition proceedings.

We are unable to understand why a cross-bill was not filed, but, in view of the fact that the complainant in the court below filed what is termed a replication to the answer, we shall treat the answer and replication as though the proper pleadings had been had in the court below and protect the minors' rights.

Appellees next insist that the minors, Stephens G. and Edward Earl Smith, are barred because Stephen was twenty-one years of age on August 24, 1921, and Edward Earl was twenty-one years of age on November 30, 1922, and plead section 3122, Code of 1906 (Hemingway's Code, section 2486) as a bar, which section reads:

"An action shall not be brought to recover any property hereafter sold by order of a chancery court, where the sale is in good faith and the purchase-money paid, unless brought within two years after possession taken by the purchaser under such sale of the property."

As to Edward Earl Smith, two years had not elapsed from the time he was twenty-one years of age until his answer, the substance of which is set out *supra,* was filed in the court. But this question was likewise set at rest in the case of *Stone & Gravel Co.* v. *Archer,* 120 Miss., *supra,* in which Judge SMITH, speaking for the court, said, speaking of the next friend:

"He had no right to purchase the land for himself, and that the sale to him was avoidable at the appellee's election, so that neither he nor those claiming through him with notice will be heard to say that he bought the land and obtained the order affirming his purchase in good faith; that is, that he did not know that he would not thereby obtain a good title to the land. For the same reason, section 3122, Code of 1906 (section 2486, 1 Hemingway's Code), invoked by the appellant, has no application here."

In other words, in a case like the instant case, where the guardian *ad litem* or next friend undertakes to acquire the title of the minor whose interest he seeks to represent, he does not act in good faith, and the minor

is not bound by the statute of limitations set up in the above section of the Code, because of the legal fraud involved in the transaction, and because of the trust relation existing between the minor and the next friend. And in all such cases this section of the Code will not serve to preclude the minor from asserting his rights independent of and unaffected by this statute, and the same has no application in this case.

Appellees next plead and present to this court section 646, Code of 1906 (Hemingway's Code, section 408), as a bar both to Stephen G. and Edward Earl Smith; more than one year having elapsed after they were twenty-one years of age before their answer was filed in court. The statute thus resorted to reads:

"When a decree shall be made for the sale or conveyance of the real estate of an infant, such decree shall be binding on the infant unless he shall, within one year after attaining the age of twenty-one years, show to the court good cause to the contrary; and it shall not be necessary to insert the saving in the decree but the saving shall not extend to decrees for the sale of the property of deceased persons, authorizing sales by guardians, or enforcing deeds of trust or mortgages."

This section, above set out, cannot operate to bar in this case, because it has no reference to the right of an infant upon attaining majority or during infancy to defend his title to lands, where a voidable decree has been entered against him, and where a want of good faith has been shown on the part of those who assume to act for him while he was under disability.

Our construction of this section of the Code is that it was intended as a saving to a minor of his rights to have any decree rendered against him, subject to review within one year after attaining the age of twenty-one years, and to permit the minor to challenge under the decree any question affecting his interest which would be regarded as good cause. As, for instance, errors of fact as well as errors of law. The history of this statute

is that it was enacted in order to prevent the necessity for inserting in decrees a saving clause granting to minors the right to have the decree reviewed within a given period after he was twenty-one years of age. The statute was intended as a shield to the minor, and not as a sword to prevent his attacking a fraud perpetrated upon him, legal though it may be, independent of the statute.

In *Mayo* v. *Clancy*, 57 Miss. 674, there was a bill to review the final settlement of the administratrix of the father's accounts, and a demurrer was sustained to the bill on the idea that as a bill of review it was not maintainable, because it did not point out errors apparent on the face of the decree predicated on newly discovered evidence. The errors there mainly relied on were for labor, repairs, and various items for which the administratrix took credit, and this court upheld that view, holding that, in determining whether there was error on the face of the account, we cannot look beyond the decree and the account. That the new matter alleged in the bill cannot be considered. The court there further held that it could not be considered as an original bill to set aside the decree allowing the final account for two reasons:

"First, it was not brought during the minority of the appellant, or within the one year allowed by Code 1871, section 1265, in which he could apply for a rehearing; second, being brought after the year, there is no allegation of fraud or collusion in obtaining the decree. Within the one year, he would have been allowed to attack the decree by merely alleging error in it, pointing it out, and offering to show it by evidence *aliunde*. After that time, he stood in exactly the same relation to the decree as if he had been an adult, except that, in making out a charge of fraud and imposition in obtaining the decree, some consideration would be given to the helplessness of the infant arising from his non age and want of experience." 57 Miss. at page 676.

The statute itself and this construction of it show that it was intended as a rehearing statute, fixing a time after a minor reached majority when he could point out an error against him.

So that we reach the conclusion that in a case like this, where the next friend purchases the land of the minor whom he assumed and essayed to represent in court as his next friend, he does not act in good faith, and neither section 3122, Code of 1906 (Hemingway's Code, section 2486) nor section 646, Code of 1906 (Hemingway's Code, section 408) have any application, and they cannot be successfully interposed to defeat the rights asserted as against the voidable sale and decree.

We have tried to state our views of the construction to be placed on these two sections plainly so that there need be no confusion as to their application in this or similar cases.

*Reversed and remanded.*