DENDY *et al. v.* COMMERCIAL BANK & TRUST CO. *et al.*[*]

(Division B. Feb. 22, 1926.   Suggestion of Error Overruled May· 10, 1926.)

[108 So. 274.   No. 25349.]

1. PARTITION.   *Minors within statutory period after arriving at majority held entitled to have partition sale at which their property was bought in under agreement set aside and property repartitioned (Code 1906, section 646; Hemingway's Code, section 408).*

   Where a petition for partition of property was filed by one of the cotenants in her own right and as next friend for her minor children, and where a sale is made thereunder by an understanding between the mother and next friend and the buyer that such buyer would buy in the property for her and her minor children if it did not bring a stated price, and where such property was bought in under such agreement and no money was paid, the minor children on arriving at age, within the statutory period, may have such sale set aside and such property repartitioned.

2. MORTGAGES.   *Bank taking mortgage from mother to whom purchaser at partition sale deeded after bidding in property for mother and infants held not purchaser in good faith without notice (Code 1906, section 646 [Hemingway's Code, section 408]).*

   Where, under the hypothesis above stated, the purchaser redeeded the property sold to the mother and no money was paid either by the purchaser or by the mother and next friend and subsequently the mother and next friend mortgaged the property to a bank, said bank is not a purchaser in good faith without notice, and the sale may be set aside.

3. Partition. *Refusal to set aside partition sale at which property was bought in but deeded to mother on suit of minors after arriving at age held error (Code 1906, section 646, [Hemingway's Code, section 408]).*

In such case, where the testimony without dispute shows that no money was paid by the purchaser at the time of the sale, and no consideration was paid between the purchaser and next friend of the minors, and there is no dispute as to the agreement that such purchase was to be made for the benefit of the mother and her minor children, it is error for the court to refuse to set aside the sale.

On Suggestion of Error.

4. Infants. *Statute saving rights of infants in sale or conveyance of land is substitute for ancient rule to insert such saving in decree, and has effect as though such right was actually reserved in decree (Hemingway's Code, section 408; Code 1906, section 646).*

Section 408 of Hemingway's Code (section 646, Code of 1906), providing a saving for the rights of infants in the sale or conveyance of real estate, is a substitute for the ancient rule in chancery to insert such saving in the decree of the court itself, and has the effect as though such right was actually reserved in the decree itself.

5. Infants. *Absolute title cannot be acquired under decree for sale or conveyance of infant's land in cases provided by statute, until expiration of period therein fixed; decree may approve sale or conveyance of infant's land as directed, but· infant has right to show good cause to set aside sale after coming of age, unless he has previously attacked sale or conveyance, and all dealing with such property are bound to take notice, of such right (Hemingway's Code, section 408; Code 1906, section 646).*

Absolute title cannot be acquired under a decree for the sale or conveyance of an infant's land in these cases provided by the statute (section 408, Hemingway's Code; section 646, Code of 1906) until the expiration of the expiration of the period therein fixed. The decree may approve a sale or conveyance as directed, but the infant has the right to show good cause after his coming of age, unless he has previously attacked such decree or conveyance, and all are bound to take notice of such right who deal with such property.

6. Partition. *Fraud between next friend of minors in partition suit and commissioner appointed to make sale and purchaser*

*at sale is good cause for setting aside decree after minor becomes of age; any cause for setting aside decree between adults during term, and any cause calling for reversal would amount to good cause for setting aside partition sale after infant becomes of age (Hemingway's Code, section 408; Code 1906, section 646).*

Fraud between the next friend of the minors in a partition suit for the sale of real estate and the commissioner appointed to make the sale and the purchaser at the sale is good cause for setting aside the decree after the minor shall become of age. Anything that would cause the court to set aside a decree after it is made by one of the parties over the objection of the other during the term, if the parties were adults, and any cause that would cause the Supreme Court on appeal to reverse the decree in the court below, would amount to good cause after the infant becomes of age.

7. JUDICIAL SALES. *Two-year statute of limitations for recovery of property sold by order of court does not apply, unless purchase money was paid and sale was made in good faith (Code 1906, section 3122; Hemingway's Code, section 2486).*

Code 1906, section 3122 (Hemingway's Code, section 2486), providing for limitation of two years for action for recovery of property sold by order of court, does not operate, unless purchase money was paid and sale was made in good faith.

---

*Corpus Juris-Cyc References:   Infants 31CJ, p. 1049, n. 46 New; p. 1054, n. 17, 18 New; p. 1055, n. 34, 44 New;   Judicial Sales 35CJ, p. 33, n. 88; p. 67, n. 28;   Mortgages 27Cyc, p. 1184, n. 18;   Partition 30Cyc, p. 277, n. 96; p. 279, n. 5a.

APPEAL from chancery court of Calhoun county.

HON. N. R. SLEDGE, Chancellor.

Suit by S. T. Dendy and others against the Commercial Bank & Trust Company and another for partition, in which the named defendant filed a cross-bill. From decree dismissing complainants' bill and canceling their claims to certain land, complainants appeal. Reversed and remanded.

*J. H. Ford,* for appellants.

I. *The proceedings for partition brought in 1909 and ended in 1910 were in their inception and termination a*

*legal fraud on the rights of appellants.* Appellants were then mere babies with no other person to look to for protection in their helplessness but their mother. She conducted the proceedings for herself and as next friend for them. She undertook to have a lien established in her favor for one thousand nine hundred seven dollars as against their rights, which she sought to have paid to her from the proceeds of the sale of the lands before any distribution should be made to them of any part thereof, though in her testimony in this suit she denies that she was entitled to it, or wanted it established, or that it was established; or if it was established, that it was not valid as to the minors.

It is undisputed in the case that W. B. Wells bought in the land at the sale for Mrs. Dendy and complainants by previous arrangement with her and her attorney. In pursuance of that agreement, Wells bid it off at one thousand five hundred fifteen dollars and ninety-five cents, received a deed to the land on confirmation and immediately deeded it to Mrs. Dendy for a recited consideration of one thousand six hundred twenty-five dollars. The confirmation was procured by her. The deeds were executed at the same time and that from Wells to Mrs. Dendy was placed on record just before that from the commissioner to him. Nothing whatever was paid by Wells or Mrs. Dendy except that she paid the expenses of the proceedings.

This method of buying through Wells as a by-bidder constituted a purchase by her the same as if she had appeared and bid it off and received a deed from the commissioner directly to her. 39 Cyc. 367; 28 C. J., p. 1187, sec. 327; *Brockett* v. *Richardson,* 61 Miss. 766; *Brandeau* v. *Greer,* 95 Miss. 100, 48 So. 519.

II. *The purchase of the land at the sale by Mrs. Dendy, the next friend of the minors, was a fraud in law on their rights and was voidable at their election. Mem-*

*phis Stone & Gravel Co.* v. *Archer,* 120 Miss. 453, 82 So. 315; *Smith* v. *Strickland,* 103 So. 782.

III.   *Appellee had notice that Mrs. Dendy was the purchaser at said sale when it took its deed of trust.* All this was of record when the bank took its deed of trust on September 10, 1920. Mr. Jagoe testified that he knew these proceedings were pending, but he made no effort to find out the facts shown and established in those proceedings before he took the deed of trust, and did not have an abstract of title made to the land in 1917 brought down to date before he took it.

Appellant and Mrs. Dendy were at this time and up to the date of the decree in this case in constructive possession of said lands, the rents being collected therefrom and the taxes paid thereon by her. From this, it would seem conclusive that at the time this deed of trust was taken, the bank had full means of knowing from the records of Calhoun county, if it did not in fact have actual knowledge, that Mrs. Dendy was the real purchaser of the land at the sale in 1910, and that appellants still owned or at least claimed their interest in the land on September 10, 1920. Having such notice, it will not "be heard to say that Mrs. Dendy through whom it claims bought the land and obtained the order affirming her purchase in good faith; that is, that it did not know that it did not thereby obtain good title to the land." Therefore, its deed of trust and the trustees' deed made to it in foreclosure thereof are likewise voidable at the election of complainants.

IV.   *It was contended that since it was alleged in the bill that Wells purchased at the partition sale in 1910 for Mrs. Dendy and these appellants, and that appellants were omitted from the deed from Wells to her by mistake, no fraud was practiced on them by her and that appellants would have to prove that such a mistake made in writing the deed at the time and also that appellee*

*had notice thereof when it took its deed of trust, before they could recover in this suit.*

It was not necessary to allege in the bill that she was guilty of bad faith and fraud in order for complainants to recover on that ground, if sustained by the proof, as the fact that she was the real purchaser, as alleged in the bill, constituted in law bad faith and fraud on her part.

Appellants were entitled to any relief under their bill coming within the purview thereof, which was supported by the proof. *Commercial Bank* v. *Williams,* 103 So. 426.

*V. Appellants were entitled to the relief prayed for in the bill whether or not appellee had notice of the legal fraud of Mrs. Dendy in purchasing and taking deed to the land at the sale in 1910, whether or not complainants were omitted from said deed by fraud or mistake.*

Appellants had the right at any time to come into court and attack the sale of the land under the proceedings for partition of 1910, on the ground of error, or irregularity in the decree, or improper decree, or fraud or collusion, and were not required to wait until they attained their majority, and might proceed by original bill. *McLemore* v. *Chicago, etc., R. Co.,* 58 Miss. 514; *Sledge* v. *Boone,* 57 Miss. 222; *Belt* v. *Adams,* 125 Miss. 387, 87 So. 666.

This was certainly true in the case at bar as to appellant, S. T. Dendy, Jr. He attained his majority on October 13, 1923. This bill was filed on February 21, 1924, and within one year thereafter. He had the right under section 646, Code of 1906 (section 408, Hemingway's Code) to bring this suit. See also *Mayo* v. *Clancey,* 57 Miss. 674; *Sledge* v. *Boone,* 57 Miss. 222; *Vaughn* v. *Hudson,* 59 Miss. 42; *Adams* v. *Belt,* 100 So. 191; *Smith* v. *Strickland,* 103 So. 782; *Belt* v. *Adams,* 125 Miss. 387, 87 So. 666.

We, therefore urge this court to reverse the decree of the court below and enter a judgment here in favor of appellants for their three-fourths interest in this land.

*J. M. Thomas,* for appellees.

It was contended by the appellants, complainants below, that the evidence supported the theory that there was *fraud* and that appellees, defendants below, first, were charged with knowledge; and, second, had actual knowledge. While, on the contrary, the appellees contended that there was no fraud, either chargeable to appellees or of which they had actual knowledge. In fact, there was no fraud in any sense.

The court below with these issues clearly drawn and understood found as a matter of fact that there was no fraud, and that appellees had not notice or knowledge of any infirmities in the title. This finding was made by the chancellor with all the witnesses before him, when he had the opportunity to decide the proper weight to give the testimony of each witness.

Therefore, we have before us the question of the application of well established principles of law to the facts of this case, as determined by the lower court, and the question of determining wherein the case at bar differs from the cited cases.

In the instant case, Windham, the commissioner, was the grandfather of the minor children. This case is distinguished from the other cited cases where the purchaser stood in trust relationship. The purchaser at the commissioner's sale by Windham was W. B. Wells, a distant cousin of Mrs. Chambers, formerly Mrs. Dendy, with whom she had never before had any business relations.

There was nothing in the record of the partition proceedings to indicate any agreement between Wells and Mrs. Chambers. Wells was not a party to the partition proceedings, merely a stranger. Any one looking at the record title could not be charged with notice of any relationship existing between Wells and the minor children, indicating a trusteeship. As a matter of fact, there was no trusteeship, so found by the lower court, and tak-

ing the testimony of Mrs. Chambers, which is the most favorable application that could be made in behalf of the appellants, she only testified that she had an agreement with Wells to deed the property back to the children but that by mistake he failed to do so, and had made the deed to her.

The court evidently took the view of her testimony in this respect as indicating that the use of Wells as a purchaser of the land was purposely to put the title in some one who would not be held to be a trustee, thereby enabling them to perfect a good title in an innocent purchaser who bought in good faith without actual knowledge of such a private agreement.

It would require actual knowledge on the part of the subsequent purchaser of the land of the trustee relationship in order to meet the requirements of the principle of law announced in *Brockett* v. *Richardson,* 61 Miss. 781. The principle involved in the instant case as to actual knowledge is further demonstrated in the Brockett case, wherein still a later purchaser, Peters, and his heirs, was found to occupy a position of being a *bona-fide* purchaser for value, which is the position that Commercial Bank & Trust Company occupies in the case at bar. See *Brockett* v. *Richardson,* 61 Miss. at 783.

The principle of law as applied to this case naturally leads to the conclusion that the Commercial Bank & Trust Company, appellee, is not charged nor is it to be injured by the secret infirmity of the title of Mrs. Chambers, formerly Mrs. Dendy, because of any secret agreement that she had had with Wells, the purchaser at the commissioner's sale.

In *Memphis Stone & Gravel Co. et al.* v. *Archer,* 120 Miss. 453, 82 So. 315, J. L. Archer brought the partition suit in his own name and as grandfather and next friend for the minor child. The record itself showed that the relationship existed and, of course, any one who subsequently purchased the property was charged with the knowledge that J. L. Archer, the grandfather and next

friend, could not acquire a good title as against his *cestui que trust.*

It could not be denied that if in the case at bar Mrs. Denby had been the purchaser at the commissioner's sale and the records showed that she being a tenant in common with her children and sued as their mother and next friend, the appellee could not acquire a good title from her because the appellee would be charged with knowledge, for the record showed it.

I do not doubt that as between Mrs. Chambers, formerly Mrs. Dendy, and the children that the sale to Wells and from Wells to her where there was a private or secret agreement between them, is a voidable transfer at the election of the minors; but in the case at bar it could be voidable only at their election in case the subsequent purchaser had knowledge of the secret agreement and, therefore, could not be a purchaser in good faith. See *Memphis Stone & Gravel Co.* v. *Archer,* 120 Miss. at 458.

Appellants in their brief take the position that appellee had notice that Mrs. Dendy was the purchaser at the sale when the last deed of trust, dated September 10, 1920, was taken by appellee. We might assume *for the sake of argument* that he was charged with this notice, still it would make no difference because of the fact that the deed of trust was only a renewal of former indebtedness which had been long outstanding prior to the filing of the proceedings in 1920 when the allegations were made that the children claimed an interest in the land as tenants in common with their mother.

However, while the appellants' brief gives as a reason why appellee had notice, that Mrs. Chambers testified that she told Mr. Jagoe, her confidential adviser, that the children did have an interest in the land, I merely call the court's attention to the fact that Mr. Jagoe testified differently, that he was never told this fact by her, and the court below evidently believed Mr. Jagoe's testimony.

But it is contended that regardless of the fact that there was no legal fraud and regardless of the fact that there was no mistake in the deed from Wells to Mrs. Dendy by failing to name the minor children in same, complainants were entitled to relief prayed for in the original bill.

This position is taken under the idea that the complainants could by original bill get relief from irregularities or errors in the decree on the partition proceedings in 1910 and cite as authority *McLemore* v. *Chicago R. Co.,* 58 Miss. 514; *Sledge* v. *Boone,* 57 Miss. 222; *Belt* v. *Adams,* 125 Miss. 387, 87 So. 666; and also section 646, Code of 1906 (section 408, Hemingway's Code).

We will assume for the sake of argument that the proceedings of 1910 did not come within the exception as being the sale of property of deceased persons, still the statute and the construction thereof in the cases cited have no application.

In the case at bar the lower court held that there was no knowledge on the part of appellee of the secret agreement made with reference to title, and, therefore, he was a *bona-fide* purchaser. There are certainly many limitations on the rights of an infant in reviewing proceedings.

However, *McLemore* v. *Chicago R. Co.,* 58 Miss. 514, makes it plain that this statute has no application to prevent the infant from attacking the proceedings by original bill on the charges of fraud, or collusion or that he had not had his day in court. The case of *Sledge* v. *Boone,* 57 Miss. 222, is simply an affirmance of the above case, being one in which there was no *bona-fide* purchaser's interest involved. Both of these cases were reviewed by our court lately in the cited case of *Belt* v. *Adams,* 125 Miss. 387, 87 So. 666.

It is a clear indication in this last case that a purchaser without notice would not be held for the unknown infirmity of title. These cases were all reviewed again in the case of *Smith* v. *Strickland,* 103 So. 782, which

143 Miss.—5.

was a case in which the trustee purchased and a subsequent purchaser could not be a *bona-fide* purchaser because he was charged with knowledge by the record itself, whereas in the instant case there was a purchase by an outsider with nothing in the record to indicate an agreement to the effect that a fiduciary relationship existed between the real purchaser and her minor children, and, further, as found by the court below, no actual knowledge on the part of her subsequent vendee that the title was claimed by the minor children.

The court below properly held from the evidence that there was a *bona-fide* sale of the land by the commissioner in 1910 to Walter Wells. Whatever secret agreement was made by Mrs. Dendy, if any, could not be a fraud of which a subsequent purchaser would be charged with knowledge, for to be charged with knowledge as a matter of law the record would have to show it.

The decree of the lower court should be affirmed.

Argued orally by *J. H. Ford,* for appellants.

ETHRIDGE, J., delivered the opinion of the court.

The appellants, S. T. Dendy, an adult, and Leona K. Dendy and Mary F. Dendy, minors, by T. J. Chambers, their stepfather and next friend, filed a suit for partition of certain property against the Commercial Bank & Trust Company and Mrs. Vannie L. Chambers (née Dendy), charging that the complainants and Mrs. Chambers, one of the defendants, were the owners as tenants in common of the land in question, which was inherited from the father of the complainants and former husband of the defendant Mrs. Chambers. They alleged that, in 1910, Mrs. Dendy filed a suit for the partition of the land in question with certain other lands, and a decree was rendered thereon in which E. J. Windham, grandfather of the complainants and father of the defendant, Mrs. Chambers, was appointed a special commissioner

to make a sale of the said lands; and that in making the said sale it was agreed by and between said Mrs. Vannie L. Chambers (née Dendy) and one W. B. Wells that the said Wells should bid on certain lands for her and the children up to a certain amount, to the end that the same should be made to bring its true value, and that should said lands be struck off to the said Wells at said sale, said purchase should inure to the benefit of said Mrs. Chambers and her minor children; that the deed should be made to him without the payment of any money, and that he should in turn redeed the said lands to her and the complainants without cost to them save the expenses of the sale. The bill further alleged that in the sale of the said land, some was struck off to Wells for one thousand five hundred fifteen dollars and ninety-five cents, and the deed made to him followed by a decree confirming the sale; that thereafter Wells intending to deed the said land back to Mrs. Chambers and the complainants, the minor children, jointly, by mistake, deeded the same to Mrs. Vannie L. Dendy, now Mrs. Chambers, without any money being paid; that this mistake in writing the deed was not discovered until after the deed made by Wells to Mrs. Dendy, now Mrs. Chambers, was recorded, but that all parties understanding fully that the minor children had never received anything from the sale of said lands and that they were then minors, she did not correct the mistake in the deed to her by making the deed back to the children.

It is further alleged that the bank, the defendant, was fully advised as to these facts, and in conjunction with Mrs. Chambers procured the suit to be filed in 1920, setting up the fact that there was a mistake in the deed and that the land should be disposed of; and that the title thereto should be acquired by the said Mrs. Chambers, formerly Mrs. Dendy, alone, so that a deed of trust thereon given by her to the defendant bank would be valid as against complainants; but later, for reasons unknown to the complainants, said bill was dismissed with-

out any relief being granted. It is further alleged that the bank, with intent to clear and defraud complainants out of their rights in said land, procured the said land to be advertised and sold under a deed of trust given by Mrs. Chambers to the said bank; that said deed of trust from Mrs. Chambers to the bank was void and without any effect to convey the complainants' interest; that all of these transactions were by collusion between the bank and Mrs. Chambers, and Mrs. Chambers was over-reached by the bank, and said transactions were a fraud in law, and the said bank was fully aware of the mistake in the deed from Wells to Mrs. Dendy, now Mrs. Chambers, and that the bank had full knowledge of the children's interest. There was a prayer for the cancellation of the deed of trust and the trustee's deed to the bank as clouds on the title of complainants.

Separate answers were filed by Mrs. Chambers, formerly Mrs. Dendy, and the bank. Mrs. Chambers admitted practically all the allegations of the bill. The bank answered denying any agreement between Mrs. Dendy and Wells; that Wells would buy at the commissioner's sale for the benefit of the complainants and their mother jointly; denied that the consideration in the commissioner's sale was for one thousand five hundred fifteen dollars and ninety-five cents; denied that there was a mistake in the deed, or that it knew anything about said alleged facts; denied that it was fully advised of the facts and references to the sale of 1910, or that it was a party to the proceedings in 1920, or that the sale was filed in conjunction with Mrs. Dendy, now Mrs. Chambers; denied any knowledge on its part that the children had any interest in the land; denied that there was any intent to cheat and defraud the children; denied the invalidity of the deed of trust from Mrs. Chambers to the bank and the trustee's deed foreclosing such deed of trust; and denied any collusion with Mrs. Chambers, or that Mrs. Chambers was overreached in these transactions, or that said transactions were for the purpose

of cheating and defrauding complainants, or that they constituted a fraud in law.

The defendant made his answer a crossbill in which it alleged that the loans were made by the bank to Mrs. Chambers on the representation by her that she was the absolute owner in fee simple of the land involved in the suit; that upon these representations loans were made to her and renewed from time to time leading up to the last loan secured by the deed of trust which was foreclosed and bought in by the bank at said trustee's sale. It is further alleged that at the time the loans were made the bank never had any intimation of an outstanding claim of the children to the land described in the bill. It is further alleged that the land was foreclosed under a deed of trust from Mrs. Chambers to the bank and of a trustee's deed to the bank, giving it a good title to the land. It is alleged that the sale by Windham, commissioner, in 1910, was a valid sale and conveyed a good title to Wells in so far as the property was accurately described; and that the conveyance from Wells to Mrs. Dendy, the defendant, now Mrs. Chambers, was a valid conveyance in so far as the property was accurately described, and that all the deeds of trust were valid and binding conveyances in trust. It is further alleged that at the time of Mr. Dendy's death, he owed debts secured by mortgage on the said land which were paid off by Mrs. Dendy to the extent of one thousand nine hundred six dollars; that the sum was paid out of her private funds, and in the partition proceedings in 1910 a lien was established in her favor against the said lands; that the sale by the commissioner was not a fictitious or simulated sale, but that Mrs. Dendy received good title to the property and immediately thereafter took out letters of guardianship for the minor children and made bond for their part of the proceeds of the sale, executing a bond to account for it; and that, therefore, the children received full compensation for the land, all of which was done by the chancery court as being fully advised of

the facts; and that the cross-bill prayed for cancellation of the claim of the complainants as a cloud on the title of the bank and for general relief.

On the trial, Mrs. Chambers, formerly Mrs. Dendy, the mother of the complainants, testified that she filed a suit for partition in the sale of the said property between herself and children, but that in order to protect the lands from being sold for less than their value, she arranged with Mr. Wells, a relative of hers and also of her deceased husband, to buy in the lands for herself and children unless some one else bid the real value of the said lands, and as there was no one to bid the real value of the lands, the same was struck off to Wells by the commissioner, who was her father and who was appointed by the chancery court to make the sale. She testified that no money was paid by Wells to the commissioner nor any paid by her to Wells except for the expenses attending the sale. She further testified that the money advanced to pay off the incumbrances and the debt of her deceased husband, Mr. Dendy, was repaid her out of the sale of a place in Chickasaw county sold under the said sale; and that she was not due anything on account of the said advances as against loans involved in the present suit. She testified that she took out letters of guardianship on the advice of her attorney, but no account was ever filed therein, as she never received any money on account of said sale for the benefit of the children, the complainants in this suit.

She further testified that she gave the deed of trust to the bank; that she disclosed the fact to the officer of the bank making the loan that the children had an interest in the land; and that the bank, through this said officer, was fully advised as to her title and that of the children involved in this suit. She further testified that the suit in 1920 was filed at the suggestion of the officer of the bank with whom she was doing business for the purpose of divesting the title out of the children into herself so as to protect the bank. It further brought

out in the evidence that in ordering the sale in 1920, the chancellor informed the parties that the property must bring not less than four thousand dollars. This property was bid in by Mrs. Chambers at that suit, but the attorney attending to that suit was unable to prove her claim for one thousand nine hundred six dollars which was advanced to pay off previous incumbrances against the property, and he finally reached the conclusion that on account of the minors' interest being involved and business questions in some of the proceedings, he would not prosecute the suit and caused the bill to be dismissed without prejudice. Nothing further was done with reference to that suit. It appeared further in the evidence that the bank in making the first loans to Mrs. Chambers did not require security, she being in business and obtaining small sums from time to time for the use of her business, but as her business increased and the demand for loans grew larger, the bank first took security on the land without having an abstract, but in 1917 the loans had grown to such an extent it caused an abstract to be made, which was introduced in evidence. This abstract showed an abstract of the proceedings in 1910, which showed on its face that the complainants were minors at the time of that suit and sale therein. The records of the chancery court of Calhoun county were destroyed by fire in 1922, and the original papers and also the minutes of the court in reference to the suit of 1910 were destroyed with all other records of the county, except a few abstract books purchased by the county from certain attorneys who had made the abstract in 1917.

The officer of the bank testified in denial of the allegations of the bill and of Mrs. Chambers' testimony that he had no knowledge of the children's interest in the said land, that he did not have an abstract made during the first year of the loan and that he did not know that there was no money paid by Wells, the purchaser, at the sale in 1910; that he did not know of anything in reference to the agreements between Mrs. Chambers, then

Mrs. Dendy, Mr. Wells, and Mr. Windham, the commissioner, in reference thereto; that he was told by Mrs. Chambers that she was the owner in fee simple of the said lands; that he acted in good faith in taking the deed of trust, and that the first he knew of the complainants' interest in said land was in 1920, when Mr. Chambers took up with him the adjustment of the deed of trust, Mrs. Chambers was then absent from home on account of illness, and Mr. Chambers complained of the bank's having transactions with Mrs. Chambers without his consent. He testified that he told Mr. Chambers that he did not think it necessary to secure his approval, as the property belonged to his wife, and for the first time, through Mr. Chambers, learned of the children's interest therein and that he (Mr. Chambers) intended to see that they were protected; that he was on his wife's guardian bond and had induced a friend to go on with him as security for the guardianship, and that he did not intend that his friend should lose on account of so doing; and that he thought the bank was in the wrong in making the loan without his knowledge or consent.

The chancellor held that the complainants were entitled to no relief and dismissed their bill, but held that the defendant bank, who was cross-appellant, was entitled to the relief prayed for in the cross-bill and canceled the claims of the complainants to the land involved, from which decree this appeal is prosecuted.

The testimony of Mrs. Chambers, the mother of the complainants, as to the agreement between her and Mr. Wells, the purchaser, and that no money was actually paid or received on account of said transaction, is not disputed by any evidence. The question, therefore, must be decided as though these facts existed and as though the bank had no knowledge thereof at the time of taking its security. Can the decree of the court below be upheld upon the theory that the bank was an innocent purchaser for value without notice? The appellant relies upon *Smith* v. *Strickland* (Miss.), 103 So. 782; *Memphis*

*Stone & Gravel Co.* v. *Archer,* 82 So. 315, 120 Miss. 453; *Brandau* v. *Greer,* 48 So. 519, 95 Miss. 100, 21 Ann. Cas. 1118; *Brockett* v. *Richardson,* 61 Miss. 766; *McLemore* v. *Chicago R. Co.,* 58 Miss. 514; *Sledge* v. *Boone,* 57 Miss. 222; *Belt* v. *Adams,* 87 So. 666, 125 Miss. 387; Code of 1906, section 646; Hemingway's Code, section 408.

In the case of *Smith* v. *Strickland* (Miss.), 103 So. 782, a case somewhat similar to the one before us, in that case the deceased husband made a will in which he provided that his land should go to the children and their mother share and share alike, with expression of the desire that she should manage and control it without restraint on account of their minority, and that she should have the full and unrestrained use of it in the responsibility left her of raising the children. Realizing that she must have all incumbrances removed from said property to meet such demands, in 1910, Mrs. Smith then having married and become Mrs. Mary G. Chapman, filed a petition in the chancery court for herself individually and on behalf of her three children, praying in the petition, as their mother and next friend, for a sale for partition and for distribution of the proceeds. An interlocutory decree of sale was entered by the court ordering the land sold and appointing the clerk as special commissioner to make the said sale. The commissioner advertised and sold the land. At the sale Mrs. Chapman, the next friend of her children, became the purchaser for one thousand five hundred dollars, which sale was duly reported to the court at the next term on motion of the mother and next friend together with the children. The court confirmed said sale and directed the commissioner to convey the land to Mrs. Chapman, and decreed the distribution of the proceeds one-fourth each to Mrs. Chapman and her minor children after paying off incumbrances on said land and the costs of the proceedings. Pursuant to the decree, the commissioner conveyed the land to Mrs. Chapman. Subsequently, Mrs. Chapman filed a petition praying that the proceeds of the sale be

paid to her on behalf of her three minor children pursuant to the provisions of the will. Citation was served on the minors, and the court entered an order, directing that the proceeds be paid to the mother for them. Mrs. Chapman borrowed two thousand five hundred dollars upon the property so bought in by her, giving notes therefor which she failed to pay, and the deed of trust was foreclosed and bought in by one Hunter for two thousand eight hundred ninety-four dollars in October, 1912. Thereafter the land was conveyed to Slaton and Harbour, consecutive vendees, and from them to the complainants. It was then alleged in the bill that the complainants had been in adverse possession of the land for more than ten years and prayed for confirmation of their title.

Among other defenses, the appellees pleaded section 646, Code of 1906, Hemingway's Code, section 408, as a bar to two of the heirs of the decision; more than one year having elapsed after they were twenty-one years of age before their answer was filed in court. After setting out the statute, the court said:

"This section, above set out, cannot operate to bar in this case, because it had no reference to the right of an infant upon attaining majority or during infancy to defend his title to lands, where a voidable decree has been entered against him, and where a want of good faith has been shown on the part of those who assume to act for him while he was under disability.

"Our construction of this section of the Code is that it was intended as a saving to a minor of his rights to have any decree rendered against him, subject to review within one year after attaining the age of twenty-one years, and to permit the minor to challenge under the decree any question affecting his interest which would be regarded as good cause. As, for instance, errors of fact as well as errors of law. The history of this statute is that it was enacted in order to prevent the necessity for inserting in decrees a saving clause granting to minors

the right to have the decree reviewed within a given period after he was twenty-one years of age. The statute was intended as a shield to the minor and not a sword to prevent his attacking a fraud perpetrated upon him, legal though it may be, independent of the statute.''

The court then cited and quoted from *Mayo* v. *Clancy,* 57 Miss. 674, and said:

''The statute itself and this construction of it show that it was intended as a rehearing statute, fixing a time after a minor reached majority when he could point out an error against him.

''So that we reach the conclusion that in a case like this, where the next friend purchased the land of the minor whom he assumed and essayed to represent in court as his next friend, he does not act in good faith, and neither section 3122, Code of 1906 (Hemingway's Code, section 2486)', nor section 646, Code of 1906 (Hemingway's Code, section 408), have any application, and they cannot be successfully interposed to defeat the rights asserted as against the voidable sale and decree.''

In *Memphis Stone & Gravel Co.* v. *Archer,* 82 So. 315, 120 Miss. 453, the court held that where a grandfather was the next friend of his seven-year old grandchild in a partition suit, bought the land at a commissioner's sale at a price which was then its reasonable value, the sale was not void but voidable at the minor's election within the time allotted to infants to exercise such right, and neither the grandfather nor those claiming under him with notice will be heard to say that he did not know that good title would not be obtained by such purchase. In the course of the opinion the court said:

''It is the duty of a next friend to protect and enforce the rights of his ward throughout the lawsuit, and in the case at bar it was the duty of J. L. Archer, in the proceeding in which the appellee's interest in the land was sold to protect the rights of the appellee, not only in the proceedings leading up to the sale, but also to prevent, if possible, the confirmation of the sale, when made, if

any of the complainant's rights were violated to her prejudice in the making thereof. *Ponder* v. *Martin,* 119 Miss. 156, 80 So. 388. Consequently, he should not have purchased the land himself, for his interest therein then became antagonistic to that of his ward, and, while the sale to him was not for that reason void, it was voidable at the appellee's election; the right so to elect to be exercised by her within the time allowed to infants in which to exercise such a right in similar cases. 24 Cyc. 29. To permit a next friend to procure an order for the sale of his ward's land and then purchase it at the sale for himself without the ward's understanding and appreciating, if in fact he was aware of what was being done, would violate one of the most elementary principles of equity, viz., a fiduciary will not be permitted any inducement to neglect the interest of his *cestui que trust,* unless the *cestui que trust* consents thereto, and this appellee because of her minority could not have done. *Brandau* v. *Greer,* 95 Miss. 100, 48 So. 519, 21 Ann. Cas. 1118.''

In *Brandau* v. *Greer, supra,* it was held that a wife of a guardian cannot lawfully acquire title to the property of his ward where the law forbids him to acquire it; that it is the duty of the guardian to protect his ward's estate in every way that he can; but that he cannot make profit on it outside of what is lawfully allowed for administering the trust. See, also, authorities in the case notes to the annotated case reports of this case.

In *Gibson* v. *Currier,* 35 So. 315, 83 Miss. 234, 102 Am. St. Rep. 442, the court in considering the law applicable to section 3122, Code of 1906, section 2486, Hemingway's Code, which was the Code of 1892, section 2760, provided that where a sale under the decree of the chancery court is made in good faith and the purchase money is paid, it cannot be attacked unless made within two years after the purchaser went into possesion. It was held by the court that a purchaser of property under decree of the chancery court could not defend under that statute unless he made actual payment of the purchase money, and

that subterfuge or sham payment will not aid him. At page 255 of the Mississippi Reports, 35 So. 315, 318, the court said:

"There is nothing in the plea of the statute of limitations. The purchase money was not paid. Mrs. Matthews paid no purchase money, did not even credit her bid (two hundred sixty-four dollars) on the decree, and did not take possession of the land. L. H. Matthews' testimony shows this. She conveyed to J. E. Jones the day of the purchase, taking his notes. He never paid anything. J. B. Jones on the same day conveyed, for five thousand, five hundred dollars, to Mrs. N. E. Ford, taking her notes. A decree was rendered January 7, 1888, for three thousand, ninety-seven dollars, amount of balance of vendor's lien, against J. B. Jones, but no effort was ever made to enforce it, because of the reversal of the original decree by the supreme court. The law is imperative in requiring actual payment. No subterfuge or sham payment will do."

In the case of *Shannon* v. *Summers*, 38 So. 345, 86 Miss. 619, involving the same statute, section 3122, Code of 1906, Hemingway's Code, section 2486, it was held that the statute could not be invoked by subsequent *bona-fide* vendee where the original purchaser did not act in good faith. It was also held that purchasers who deraigned title through a chancery sale are charged with notice of the violation of the Constitution of 1869, article 12, section 18, requiring the land to be sold in pursuance of decrees of courts to be divided into tracts not exceeding one hundred sixty acres, which the record of the proceedings leading up to the sale discloses. At page 629 of the Mississippi Reports, 38 So. 345, 347, the court said:

"By its terms, Code 1880, section 2693, does not apply in any case unless the sale is in good faith. The burden is on the purchaser to show that the sale was made in good faith. *Jeffries* v. *Dowdle,* 61 Miss. 508. That burden was not met in this case. It is evident from the tes-

timony of Herron, the administrator, and of Rowland, purchaser, that the latter, in purchasing the land, acted as agent for the former, who was to take the land off his hands, and that while the administrator, who owned all the debts chargeable against the estate, gave the estate credit by the amount of Rowland's bid for the land, yet Rowland never paid Herron, either as administrator or otherwise, the amount of his bid. It is reasonably certain that the debt due by the estate paid Rowland's bid for the land, and that the purchase money was not paid otherwise. The sale was virtually made by the administrator to himself, and was consequently not in good faith within the meaning of the statute.

"We therefore hold the sale void because made in violation of a provision of the Constitution, and it was not protected by the two years' limitation, because not made in good faith. Subsequent vendees cannot shelter themselves behind the two years' limitation where the original purchaser could not. It is only the good faith of the parties to the chancery sale that is to be considered in determining as to whether the bar of the two years' statute can be invoked. The good faith of subsequent vendees has nothing whatever to do with the application of the statute. *Jeffries* v. *Dowdle,* 61 Miss. 508. Nor can the appellees (defendants below) successfully invoke the doctrine of innocent purchaser for value. Deraigning title through a chancery sale, they were charged with notice of everything in the record of the proceedings leading up to the sale and conveyance. It was manifest from the record that the sale was made in disregard of a provision of the Constitution applicable thereto. Defendants are charged in law with a knowledge of this fatal defect in their title when they acquired it. Hence their title must fail."

We think the statute giving minors one year after coming of age to contest the proceeding gives them the right to prove the facts that will avoid the decree. This provision being by statute, of course, charges the bank

in this case with notice of their right. The abstract of title in proof showed that the parties were minors, and, consequently, showed the bank that they had one year within which to challenge the validity of the proceedings after coming of age. We therefore hold that the bank was not a purchaser for value without notice; and the proof being undisputed that the purchase money was not paid, and that there was an agreement between Mr. Wells and Mrs. Dendy that he was to buy for account of all parties, the chancellor erred in dismissing the complainants' bill and in sustaining the cross-bill as to the appellants.

The judgment of the court below will therefore be reversed, and the cause remanded.

*Reversed and remanded.*

## On Suggestion of Error.

On a former day of this court, we reversed this case.

The appellee, who won in the court below, has filed an elaborate suggestion of error, in which it contends that we erred and have established a new and dangerous doctrine, which has the effect of destroying the principle of a *bona-fide* purchaser in partition proceedings where minors are involved. It contends, also, that our opinion was contrary to certain decisions of this court, and undertakes to distinguish the cases cited in the former opinion from the case at bar.

We have given this suggestion of error full and deliberate consideration, and we could rightfully dispose of it on the authorities cited in the former opinion without comment; but, in view of the earnestness with which the suggestion of error has been argued therein, we will respond to it by referring to some of the authorities which we did not quote from in the former opinion.

In *McLemore* v. *Chicago, St. Louis & New Orleans Railroad Co.*, 58 Miss. 514, cited in the former opinion, this court construed article 97, p. 555, of the Code of 1857, which with some amendments as to time has been

brought forward as section 646, Code of 1906 (section 408, Hemingway's Code), and held that it was intended as a substitute for the ancient rule in chancery courts to insert, in decrees affecting the inheritance of infant defendants, a saving in their rights until they arrived at maturity, usually giving six months after such infants attained majority to attack the decree rendered against them during infancy. The usual clause inserted in such decrees, according to this decision was as follows:

"And this decree is to be binding on the defendants unless, on being served with subpoena, they shall, within six months after they shall attain the age of twenty-one, show unto this court good cause to the contrary."

It was held that this practice, established under this rule, was that, if the infant defendant was dissatisfied with the defense made for him and wished to make a new defense, he must, in general, wait until he is twenty-one years of age; but, upon special circumstances shown, he might obtain leave to make a new defense during his infancy, and if he made such defense of such leave he would be bound accordingly, with no subsequent right to again attack the decree. But, if such infant wishes to impeach the decree on the ground of fraud, collusion, or error, he may proceed by original bill, without waiting to attain his majority. At page 521, of this case, the court said:

"Decrees against infants, as to which the statute makes the saving mentioned, are subject to the contingency specified by the statute. They are liable to assailment by the infant at any time within three years after he attains the age of twenty-one years. The party interested in concluding the infant defendant at an earlier day may, within six months after he attains the age of twenty-one years, summon him to appear and show cause against the decree, or serve him with a copy of it. If this is not done, the infant defendant has three years after his majority in which to show cause against the decree.

"Until the decree is binding on the infant, it may be assailed by him, and cause shown against it. The complainant, and all who hold the real estate under him, hold subject to the contingent character of the decree, and liable to have good cause to the contrary shown by the infant defendant, according to the saving in his favor by the statute. Although the decree is final in form, and the sale or conveyance may be made as it directs, it is subject to the right reserved by law to the infant to show cause to the contrary.

"It is clear, therefore, that an absolute title cannot be acquired under a decree for the sale or conveyance of the real estate of an infant, in those cases in which a saving is made in his favor until such decree shall be binding on the infant, as shown above. The decree may be executed, and a sale or conveyance be made as directed; but the right of the infant to show to the court good cause to the contrary of the decree is secured by the statute, and all are bound to take notice of it and the character it impresses on the decrees to which it applies. . . .

"The statute cited was intended as a substitute for the rule in chancery courts to insert in decrees affecting the inheritance of infant defendants a saving in the following words, viz.: 'And this decree is to be binding on the defendants unless, on being served with subpoena, they shall, within six months after they shall attain the age of twenty-one, show unto this court good cause to the contrary.'

"Under such decree the practice was to serve the late infant with a subpoena to show cause, and if he failed to appear or to show cause against the decree it was made absolute. If he appeared, he might defend and show the decree to be wrong.

"When the infant defendant might come into court to impeach a decree against him, and how he might proceed, and exactly what his right and remedy were, seem not to have been very well settled in England at a comparatively recent date. The precedents on this subject are

very few, and the learning afforded by reports and textbooks is meager, fragmentary, and by no means satisfactory.''

After reviewing certain authorities, the court, at page 524 of the opinion said:

''But it was the settled doctrine of the chancery courts, that, if the infant sought to impeach a decree on the ground of fraud, collusion, or error, he was not required to wait until he attained his majority, and might proceed by 'original bill, in which it will be enough for him to say the decree was obtained by fraud and collusion, or that no day was given him to show cause against it.' *Richmond* v. *Tayleur,* 1 P. Wms. 737; 1 Dan. Ch. Pr. (5th Ed.) 164, and authorities cited in note; *Sledge* v. *Boone,* 57 Miss. 222; *Enochs* v. *Harrelson,* 57 Miss. 465. See, also, *Smith* v. *Bradley,* 6 Smedes & M. 485, as to what the right of the infant was.

''Such were the rights of infant defendants in chancery, which review is presented as bearing on the question as to what is their position under the statute we are considering, for we have said that the statute is a substitute for the chancery rule.

''Independent of the statute, it was the doctrine that the infant, desiring to impeach the decree for fraud, collusion, or error, might proceed by bill of review, or supplemental bill, in nature of a bill of review, or by original bill; and in case of a decree *nisi causa* against an infant, on his coming of age and applying to the court for leave to put in a new answer, it was granted on his *ex parte* application, in the case of *Fountain* v. *Caine,* 1 P. Wms. 504. See, also, *Napier* v. *Effingham,* 2 P. Wms. 401. In I Daniell's Chancery Practice, p. 174, it is said that the present practice is believed to be different, and that the motion or petition will be for leave to make a new defense; but the text gives no information as to whether notice of such motion or petition is required to be given to anybody.''

It will be seen from the second syllabus of this case that, although the decree is final in form and may be executed by a sale or conveyance, yet the right of the complainant and the purchaser of the real estate, or any claimant or holder under the latter, was subject to the contingent character of the decree which is liable to have good cause shown against it by the infant within the time allowed by statute, and no absolute title under such decree can be acquired until the decree has become binding on the infant by his failure to avail of the statutory saving in his favor. See, also, Fletcher's Equity Pleading and Practice, p. 729 *et seq.*, section 710; Griffith, Ch. Prac., p. 751, section 647.

It is said in the suggestion of error that we erred in holding that the testimony of Mrs. Chambers, formerly Mrs. Dendy, was uncontradicted, and the recitals of the decree of the court confirming the sale in 1910, it is said, is sufficient to make a conflict, upholding the right of the bank as purchaser without notice. It is also said that Mrs. Chambers, formery Mrs. Dendy, had discharged certain incumbrances against the estate of her husband, and that this was allowed her and constituted a part payment of the money. Mrs. Chambers testified that this incumbrance money which she paid to protect their estate was allowed out of the sale of the other property embraced in the proceeding. The statute would be a vain and useless thing, if the recitals of the decree confirming the sale, although procured by fraud, could not be reviewed.

It is true that the presumption of the regularity of the decree would be presumed in the absence of attack, but when the facts are produced in evidence the case is to be controlled by the facts so produced. Both Mr. Wells and the commissioner who made the sale were available to the defendant to show that the testimony of Mrs. Chambers was not true; but neither was produced, although each would have necessarily had knowledge of the transaction. So there was no dispute as to the facts. The

saving under the decree  under the former practice reserved the right of the minor to attack the decree for good cause, and the statute in the present case writes into every decree of this kind a saving as full and effectual as the court could do.  As every person must know the law, he is charged with notice of the saving to the same extent as if it were actually written in the decree.

It is difficult to see upon what theory a person could be held to be a purchaser for value and in good faith with this knowledge. He is certainly bound by everything that inquiry would have disclosed to him, and, as there is no showing that he made any inquiry, there is nothing to show that the facts would not have been disclosed to him.  The statute shows that the infant defendant may, after attaining his majority, attack the decree for good cause.  Just exactly what "good cause" meant is not necessary to be decided here, because the testimony shows fraud between the commissioner and purchaser and the next friend of the minor.  Certainly fraud is good cause. It would appear that anything would be good cause to set the decree aside within the period allowed by statute after the minor reaches majority that would be good cause for the court to set it aside during the term on application of one of the parties, or such fact, if showing were made and disallowed in the court, as would cause the reversal of the cause here.  There, of course, can be a multitude of things that could be shown in different cases, but we will not lay down any hard and fast rule or definition with reference thereto.

The suggestion of error undertakes to distinguish certain cases cited from the case at bar, referring to the cases of *Jeffries* v. *Dowdle*, 61 Miss. 504, *Brockett* v. *Richardson*, 61 Miss. 766, *Summers* v. *Brady*, 56 Miss. 10, *Morgan* v. *Hazelhurst Lodge*, 53 Miss. 665, *Hall* v. *Wells*, 54 Miss. 289, *Sanders* v. *Sorell*, 65 Miss. 288, 3 So. 661, and *Chapman* v. *Sims*, 53 Miss. 154, which decisions construed section 3122, Code of 1906 (Hemingway's

Code, section 2486), as contained in prior Codes. There seems to be some conflict between some of these decisions, and the cases of *Morgan* v. *Hazelhurst Lodge,* 53 Miss. 665, *Hall* v. *Wells,* 54 Miss. 289, and *Sanders* v. *Sorrell,* 65 Miss. 288, 3 So. 661, seem to be in conflict with the announcement in *Jeffries* v. *Dowdle,* 61 Miss. 504, and *Brockett* v. *Richardson,* 61 Miss. 766; but the cases of *Gibson* v. *Currier,* 83 Miss. 234, 35 So. 315, 102 Am. St. Rep. 442, and *Shannon* v. *Summers,* 86 Miss. 619, 38 So. 345, which are the latest cases and are controlling, support the opinion heretofore rendered.

It is true that all of these cases construed a different section of the Code, and these last-mentioned cases, cited in the former opinion, were referred to as showing principles analogous to the ones that were adopted in construing the present statute. It is, of course, well settled that the last announcement of the court, when in conflict with prior decisions, overrules them to the extent of the conflict, and the principles announced in *Gibson* v. *Currier* and *Shannon* v. *Summers* were controlling in the present statute. They seem to be bound and in conformity with the purpose of the statute.

It was not intended that the statute of limitation of two years, provided for in section 3122, Code of 1906 (section 2486, Hemingway's Code), should begin to operate unless the purchase money was paid and the sale was made in good faith. So it appears to us that we would not be warranted in departing from the announcement of these latter cases. It is not necessary for us to hold that they, in effect, overrule all of the decisions of the former cases, or to state just how far the decisions are consistent, and how far antagonistic. It would be safer to reserve decision on these questions until they are squarely presented for decision. We have no doubt that the attorneys of the state will be able to interpret for themselves the decisions of this court as applied to such facts which they are called upon to deal with. We

do not feel warranted in undertaking the reconciliation of the cases, or in the distinguishing of them.

We are satisfied that we have reached the correct conclusion in this case, and that it is supported by the authorities heretofore referred to. The suggestion of error will therefore be overruled.

*Suggestion of error overruled.*